UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LANCE TAYLOR,

                            Plaintiff,                    Case No. 1:19-cv-991

v.                                                        Honorable Paul L. Maloney

SHANE JACKSON et al.,

                            Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.      Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains occurred at that facility. In Plaintiff's

first amended complaint (ECF No. 7), Plaintiff sues LRF personnel: Warden Shane Jackson, Resident Unit Manager K. Brege, Assistant Deputy Warden/Housing P. Davis, Prison Counselor D. Melton, Inspector F. Johnson, and Grievance Coordinator T. Pipkins.

Plaintiff alleges that he transferred in to LRF on October 8, 2019. He was placed in a punitive sanction wing. Plaintiff claims "my General Population privileges were rescinded for a period of 18 days, despite me not being on any disciplinary sanctions." (Am. Compl., ECF No. 7, PageID.76.)

By way of letters, Plaintiff asked Inspector F. Johnson to correct the improper placement. She claims she did not receive the letters and denied a move.

Plaintiff also sent "kites" to Defendants Davis, Jackson, Brege, Melton, and Johnson regarding the problem, but none of them responded.

Before Plaintiff was moved to general population on October 26, 2019, Defendants Melton and Brege informed Plaintiff that everyone starts out on the sanction wing.

On October 27, 2019, Plaintiff was taken to segregation after a weapon was recovered from Plaintiff's area of control. Even though he was found not guilty with regard to the weapon, he was released back to a unit on the sanction wing for 17 and one-half days.

Plaintiff again submitted kites to Melton and Brege. They again told him that he was not special and that his housing complaints were groundless.

Plaintiff contends that Defendant Pipkins refused to process grievances regarding the housing issue and then Pipkins retaliated against Plaintiff by not processing grievances after Plaintiff filed a grievance against Pipkins. Defendant Johnson rejected a grievance as duplicative even though Plaintiff contends the grievance was not duplicative.

On December 10, 2019, defendant Pipkins told Plaintiff "Since you want to grieve me, you are no longer allowed to file grievances unless I authorize it. You want to play? Let's play." Plaintiff was put on modified grievance access.

Plaintiff claims that his placement in disciplinary housing without reason violates due process, equal protection, and the Eighth Amendment. Plaintiff claims that Pipkins failure to process grievances was malicious and that Pipkins' placement of Plaintiff on modified access was retaliatory for Plaintiff's attempt to pursue conduct protected by the First Amendment.

Plaintiff seeks tens of thousands of dollars in compensatory and punitive damages, Defendant Pipkins' termination, and the abolition of the procedures that permitted Defendants to place Plaintiff in restrictive housing.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.    Due process

The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff complains that he was deprived of his general population privileges, twice, without due process. Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long

has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

In *Rimmer-Bey*, the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security

classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111

F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Plaintiff has failed to allege any facts that indicate his brief stays in "sanction" housing resulted in significant and atypical burdens. Accordingly, he has failed to allege any interest that might be protected by due process.

## IV. Eighth Amendment

The Eighth Amendment prohibits any punishment which violates the civilized standards of humanity and decency, or involves the unnecessary and wanton infliction of pain. *See Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). To prove an Eighth Amendment violation, an inmate must show that he has been deprived of the minimum civilized measures of life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

## V. Equal protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a

governmental action adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such actions "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *see also Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff's equal protection claim is wholly conclusory. Plaintiff alleges that Defendants treated him poorly by placing him in "sanction" housing, but he does not allege that they treated him differently than others who were similarly situated. To the contrary, Plaintiff's allegations suggests that all prisoners were treated just as Plaintiff was treated. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

## VI. Grievance procedure

Plaintiff claims that the Defendant Pipkins—and perhaps Defendant Johnson—interfered with the processing of his grievances, thereby violating Plaintiff's First Amendment rights. The amendment stops the government from generally prohibiting expressions in the form of petitions for redress and from imposing sanctions on one who petitions for redress. *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 464 (1979). In *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999), the Sixth Circuit explained the nature of the right:

> The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. "The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). The First Amendment protects Apple's right to petition, but his suit is founded completely on a mistaken reading of that Amendment. A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views.

*Apple*, 183 F.3d at 479; *see also BPNC, Inc. v. Taft*, 147 F. App'x 525, 531 (6th Cir. 2005) ("The purpose of the Petition Clause, though, is to ensure that citizens may communicate their will through direct petition to the legislature and government officials."). Thus, Plaintiff has a First Amendment right to file grievances against prison officials, *Herron v. Harrison*, 203 F. 3d 410,415 (6th Cir. 2000), but the amendment does not require the government to consider, respond to, or grant relief on that grievance.

Plaintiff's allegations reveal that he is trying to expand his right to petition for redress—to complain about prison officials—into a right to compel those officials to listen, or at least to follow their own procedures. The protections afforded by the right to petition are not that broad. It is a right of expression, not a right to process following the expression. "[A] state has no federal due process obligation to follow all of its own grievance procedures . . . ." *Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003). An inmate does not have a constitutionally

protected interest in a jail or prison grievance procedure or the right to an effective procedure. *Walker v. Michigan Dep't of Corrections*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Thus, Plaintiff's claim that Pipkins or Johnson violated Plaintiff's First Amendment rights by failing to properly process his grievances is meritless.

## VII.    First Amendment retaliation

Finally, Plaintiff claims that Defendant Pipkins violated Plaintiff's First Amendment right to file a grievance when Pipkins retaliated against Plaintiff by putting him on modified grievance access. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

Plaintiff claims that Defendant Pipkins retaliated against him by placing him on modified access to the grievance procedure. The Sixth Circuit repeatedly has held that placement

on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. Sept. 26, 2001). As these courts have recognized, placement on modified access to the grievance procedure would not deter a person of ordinary firmness from exercising his First Amendment rights because placement on modified access would not deprive a prisoner of the ability to file civil rights actions in federal court. Instead, placement on modified access to the grievance procedure merely enables prison officials to screen prisoners' grievances prior to filing to determine whether they were grievable, non-frivolous, and non-duplicative. *See also Kennedy*, 20 F. App'x at 471 (citing Mich. Dep't of Corr. Policy Directive 03.02.130(II)(PP)). Therefore, Plaintiff's retaliation claim against Defendant Pipkins is properly dismissed.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith.

Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   January 14, 2020                    /s/ Paul L. Maloney
                                             Paul L. Maloney
                                             United States District Judge